RICHARD GRIMM (SBN 177463)
The Alameda, Suite 200
Santa Clara, CA 95050
Telephone:    (650) 248-5487
Facsimile:     (650) 618-9856
Email: richard@richardgrimm.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**Southern Division**

| | |
|---|---|
| **BRUCE FELT,** | |
| **Plaintiffs,** | |
| v. | Case No. _____ |
| | **COMPLAINT** |
| **TEN-X, LLC, f/k/a AUCTION.COM, LLC; PETER MUNDHEIM; AGHA S. KHAN, STONE POINT CAPITAL, LLC; and CAPITALG LLC,** | |
| **Defendants.** | |

Plaintiff Bruce Felt, by and through undersigned counsel, states the following as his complaint against TEN-X, LLC, formerly Auction.com, LLC (the "Company"), Peter Mundheim Agha S. Khan, Stone Point Capital, LLC, and CAPITALG, LLC (together, the "Defendants"):

**<u>INTRODUCTION</u>**

1.    Plaintiff asserts claims for breach of fiduciary duty, fraud, and violation of federal and state securities laws against the Defendants, and each of them. These claims arise out of (a) the Company's misrepresentations as to the value of its incentive common units, causing Plaintiff to decline to exercise stock options to acquire Company incentive common units that, had he known their value, he would have exercised, (b) the Company's material

COMPLAINT - 1

omissions of fact on which Plaintiff relied in declining to exercise his options, (c) the Company's violation of SEC Rules 12 and 701 by not providing Plaintiff material information affecting the value of his stock options, and (d) the Company's violation of 15 U.S.C. § 77e and Cal. Corp. Code § 25110 by fraudulently selling non-exempt, unregistered securities. As a direct, foreseeable, and proximate result of the Company's and the individual Defendants' misconduct, Plaintiff has suffered and will continue to suffer damages in excess of $4,561,784.

## **PARTIES**

2.     Plaintiff Bruce Felt is a natural person residing at 1342 Garden Lane, Menlo Park, California, 94025.

3.     Defendant TEN-X, LLC, formerly known as Auction.com, LLC, is a Delaware limited liability company having its principal place of business at One Mauchly, Irvine, CA 92618. The Company's agent for service of process in California is Registered Agent Solutions, Inc., 1220 S Street, Suite 150, Sacramento, CA 95811.

4.     Peter Mundheim ("Mundheim") is a Principal and Counsel at Stone Point Capital and a member of the Company's Board of Directors.

5.     Agha S. Khan ("Khan") is a Senior Principal at Stone Point Capital and a member of the Company's Board of Directors.

6.     Stone Point Capital, LLC ("Stone Point"), is a limited liability company organized and existing pursuant to the laws of the State of Delaware. Stone Point operates offices in New York City and Greenwich, Connecticut.

7.     CAPITALG, LLC, is a limited liability company having its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## JURISDICTION AND VENUE

8.      This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a).

9.      This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's state law claims are so related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred here.

11.      This Honorable Court has personal jurisdiction over the Company pursuant to Cal. Code Civ. Proc. § 410.10 because its principal place of business is located in, and Plaintiffs' claims arise out of activities in, the State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

12.      This Honorable Court has personal jurisdiction over Mundheim pursuant to Cal. Code Civ. Proc. § 410.10 because Plaintiff's claims arise out of activities in the State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

13.      This Honorable Court has personal jurisdiction over Khan pursuant to Cal. Code Civ. Proc. § 410.10 because Plaintiff's claims arise out of activities in the State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

14.      This Honorable Court has personal jurisdiction over Stone Point Capital pursuant to Cal. Code Civ. Proc. § 410.10 because Plaintiff's claims arise out of activities in the

State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

15.    This Honorable Court has personal jurisdiction over CAPITALG, pursuant to Cal. Code Civ. Proc. § 410.10 because its principal place of business is, and Plaintiff's claims arise out of activities in, the State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

## FACTUAL ALLEGATIONS

16.    The Company is in the business of online real estate sales.

17.    Plaintiff served as the Company's Chief Financial Officer from July 25, 2012 through April 29, 2014.

18.    On April 29, 2014, Plaintiff and the Company entered into a Confidential Transition and Separation Agreement and Release (the "Agreement"). Between April 29, 2014 and June 6, 2014, Plaintiff continued to be employed by the Company for the purpose of transitioning his responsibilities to a successor and assisting with the recruitment and retention of key employees.

19.    Pursuant to the Agreement, Plaintiff's employment at the Company ended on June 6, 2014.

20.    As of his separation from the Company, Plaintiff had vested in 808,827 options to purchase the Company's incentive common units.

21.    The Company's incentive common units subject to the options are "securities" within the meaning of 15 U.S.C. § 77l and 17 C.F.R. § 240.701.

22.    The incentive common units and the options are "securities" within the meaning of Cal. Corp. Code § 25110.

COMPLAINT - 4

23.   Pursuant to the Agreement, Plaintiff's exercise period for the options was extended to the earlier of (i) three years from his separation date (*i.e.* June 6, 2017), or (ii) one year after the effective date of an initial public offering by the Company.

24.   Pursuant to the Agreement, the Company promised to "provide [Plaintiff] with all of the information it is obligated to provide its Incentive Common Unit holders under applicable law and agreements…."

25.   Immediately preceding the expiration of Plaintiff's exercise period the Company represented to Plaintiff that the fair market value of its common units was no greater than $4.76 per share. At that price, Plaintiff's shares would have been "underwater", that is, the cost to exercise Plaintiff's options exceeded the purported value of the Company common units. According to the Company, Plaintiff's options were worthless.

26.   Between June 6, 2014 and June 6, 2017, the Company omitted material facts that would have indicated the fair market value of its incentive common units was, or was likely to soon be, greater than $4.76 per share.

27.   The Company knew or should have known that the IRS § 409A valuation of its incentive common units was undervalued and grossly misleading.

28.   The Company's IRS § 409A valuation was intended to and did mislead Plaintiff as to the value of the Company's incentive common units and Plaintiff's options.

29.   The Defendants, and each of them, intentionally misrepresented to Plaintiff the value of the Company's incentive common units.

30.   Defendants, and each of them, intentionally omitted material facts that would have revealed to Plaintiff that the value of the Company's incentive common units was materially higher than represented by the Company.

COMPLAINT - 5

31.     The Defendants, and each of them, benefitted from the expiration of Plaintiff's options.

32.     On August 2, 2017, the Company announced Thomas H. Lee Partners ("THL"), a private equity firm, had entered into an agreement to purchase a controlling interest in the Company.

33.     Upon information and belief, THL paid $10.40 per unit for Company common units.

34.     In March or April of 2017, the Company gave its employees the opportunity to exchange their vested options to purchase the Company's incentive common units for RSUs in the Company's incentive common units ("RSUs"). Employees electing to participate in the exchange received one (1) RSU for three (3) Company options surrendered. The exchange therefore had the effect of materially diluting a participating employees' equity by two-thirds.

35.     Holders of vested RSUs were provided equity in the Company without having to pay the exercise price as required by the Company options.

36.     Thus, if the options issued by the Company were "underwater;" that is, if their strike price was at or above the value of the Company's incentive common units, the RSUs were more valuable than options, which had no value at all.

37.     However, if the value of the Company's stock was likely to increase as a result of the THL transaction, three Company options were worth considerably more than one Company RSU.

38.     Upon information and belief, at the time the Company provided the exchange opportunity to its employees the Company was aware of the THL transaction and of the fact that the value of its common units was or would be materially greater than $4.76 per unit.

39.     At the time the Company provided the exchange opportunity to its employees it failed to disclose the THL transaction.

40.     The Company did not provide Plaintiff with the exchange opportunity.

41.     Nor did the Company later agree to Plaintiff's request for a net exercise option, even though the Company was aware the value of its stock was well over the strike price on Plaintiff's options.

42.     The Company's failure to disclose and/or conceal the THL transaction and otherwise mislead Plaintiff as to the true value of its common units constitutes fraud and, *inter alia*, violated Securities Exchange Commission Rule 12(a), 15 U.S.C. § 77l, and California Corporations Code § 25110.

43.     On June 24, 2015, the Company provided Plaintiff with a Confidential Disclosure Statement (the "2015 Statement"). The 2015 Statement misrepresented the value of the Company and that the value of the Company's common units was, and was likely to remain, below the strike price of Plaintiff's options.

44.     In particular, the 2015 Statement contained following information that was either misleading or inaccurate as of 2017:

        a.   The Company did not account for THL or other potential investors in calculating the fair market value of its common units.

COMPLAINT - 7

b. The Company Directors determined the fair market value of the Company's common units "in its sole discretion" without accounting for later obtained information.

c. The Company manipulated its forecasts in order to understate the true value of the company.

d. The Company did not consider the price it offered to others to invest or purchase the Company, which represented the Company's undisclosed belief as to its value.

45. The Company transmitted the 2015 Statement to Plaintiff by using the United States Postal Service.

46. Prior to June 6, 2017, the Defendants knew or should have known that the representations contained in the 2015 Statement were misleading, incomplete, and inaccurate.

47. Pursuant to SEC Rule 701, 17 C.F.R. § 230.701, Defendants were required to provide Plaintiff with information necessary to correct the misleading statements in the 2015 Statement.

48. Pursuant to SEC Rule 701, Defendants were required to disclose to Plaintiff the value and anticipated value of the Company and its common units.

49. Prior to the expiration of the exercise period, Defendants failed to provide Plaintiff with information necessary to correct the misleading statements in the 2015 Statement and information regarding the actual value of the Company's common units.

COMPLAINT - 8

50.     Throughout the exercise period, and with increasing frequency beginning in May of 2017, Plaintiff requested the Company provide him information regarding the value and anticipated value of the Company's common units and his options.

51.     During the exercise period of Plaintiff's vested options, the Company represented to Plaintiff that the value of the Company's common units was, and was likely to remain, below the strike price of Plaintiff's options.

52.

53.     The Company continued to represent to Plaintiff that the value of the Company's common units was $4.76 per share and that his options were "underwater."

54.     The Company intentionally and materially misled Plaintiff as to the value of its common units and Plaintiff's options.

55.     The misrepresentations made to Plaintiff by the Company were material and would have affected his decision to exercise his Company options during the exercise period.

56.     During the exercise period of Plaintiff's vested Company options, the Company withheld information from Plaintiff indicating the value of the Company's common units was likely to increase significantly above the strike price of Plaintiff's vested options.

57.     The information withheld from Plaintiff by the Company was material and would have changed his decision to exercise his options during the exercise period.

58.     Given the information the Company provided to and withheld from Plaintiff regarding the value of his vested options, Plaintiff declined to exercise his vested options during the exercise period.

COMPLAINT - 9

59.    Had Plaintiff known that the Company was considering the THL transaction, and the price to be paid for the Company's common units, Plaintiff would have exercised his vested options during the exercise period.

60.    The Defendants, and each of them, had a duty to disclose to Plaintiff the THL transaction during the exercise period.

61.    Plaintiff relied on Defendants' representations and omissions in declining to exercise his Company vested options during the exercise period.

62.    As a result of the Defendants' misrepresentations of material fact and omission of material fact, Plaintiff has suffered damages in excess of $4,561,784.

## COUNT ONE
## BREACH OF FIDUCIARY DUTY
### (Stone Point, GOOGLE VENTURES, Mundheim, and Khan)

63.    Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

64.    Stone Point, GOOGLE VENTURES, Mundheim, and Khan, and each of them had a fiduciary duty to Plaintiff.

65.    Stone Point, GOOGLE VENTURES, Mundheim, and Khan, and each of them, breached their fiduciary duty of loyalty to Plaintiff by enriching themselves at Plaintiff's expense.

66.    Stone Point, GOOGLE VENTURES, Mundheim, and Khan, and each of them breached their fiduciary duty of due care to Plaintiff by misleading him as to the actual and anticipated value of the Company's common units and failing to disclose to Plaintiff the THL transaction and/or its impact on the fair market value of the Company common units.

67.     Stone Point, GOOGLE VENTURES, Mundheim, and Khan, and each of them, breached their fiduciary duty of good faith to Plaintiff by misleading him as to the actual and anticipated value of the Company's common units and failing to disclose to Plaintiff the THL transaction and/or its impact on the fair market value of the Company common units.

68.     As a direct, proximate, and foreseeable result of the aforementioned breaches of the fiduciary duties owed Plaintiff, he has suffered, and will continue to suffer damages in an amount to be proven at trial in excess of $4,561,784.

**COUNT TWO**
**FRAUD**
**(All Defendants)**

69.     Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

70.     At all relevant times hereto Defendants, and each of them, acted with deceit in order to enrich themselves at Plaintiff's expense.

71.     Defendants, and each of them, had a duty to disclose to Plaintiff material facts regarding the value and anticipated value of the Company's common units.

72.     Defendants, and each of them, represented to Plaintiff that the value of the Company's common units was below the strike price of his options.

73.     Defendants' representations as to the value of the Company's common units were material facts.

74.     Plaintiff reasonably relied on Defendants' misrepresentations as to the value and anticipated value of the Company's common units in deciding whether to exercise his options.

75.     Defendants, and each of them, intended that Plaintiff rely on their misrepresentations as to value and anticipated value of the Company's common units.

76.     Defendants, and each of them, knew that the THL transaction would materially increase the value of the Company's common units, and possessed this knowledge before the expiration of the exercise period for Plaintiff's options.

77.     Defendants, and each of them, intentionally failed to disclose the THL transaction to Plaintiff prior to the expiration of the exercise period for Plaintiff's options.

78.     Defendants, and each of them, concealed the THL transaction from Plaintiff prior to the expiration of the exercise period for Plaintiff's options.

79.     The THL transaction was a material fact Defendants, and each of them, omitted from disclosure to Plaintiff.

80.     Defendants, and each of them, intended that Plaintiff rely on their failure to disclose the THL transaction during the exercise period for Plaintiff's options.

81.     Plaintiff reasonably relied on Defendants' omission of the material fact of the THL transaction.

82.     As a direct, proximate, and foreseeable result of Defendants' misrepresentations, concealment, and omission of these material facts Plaintiff has suffered, and will continue to suffer damages in an amount to be proven at trial in excess of $4,561,784.

## COUNT THREE
## FEDERAL SECURITIES LAW VIOLATIONS
## (All Defendants)

83.     Plaintiff incorporate the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

84.    Plaintiff's common units and options were "securities" within the meaning of 15 U.S.C. § 77l and 77e.

85.    Because of the violations described herein, the Company's securities were not exempt from registration with the SEC.

86.    The Company violated SEC Rule 12(a), 15 U.S.C. § 77l, by selling Plaintiff unregistered securities in violation of 15 U.S.C. §§ 77e and 77c. The Company's violations include:

    a.  using the means of interstate commerce to communicate misleading and false statements of fact to Plaintiff in connection with the sale of unregistered securities,

    b.  using the means of interstate commerce to omit material facts from its communications with Plaintiff in connection with the sale of unregistered securities, and

    c.  selling unregistered securities not subject to any exemption from registration.

87.    Upon information and belief, the aggregate sales price of securities sold by the Company during the twelve months prior to June 4, 2017 exceeded the greater of $5 million, 15% of the Company's total assets, or 15% of the outstanding amount of the Company's securities being sold in reliance on Rule 701.

88.    Because the Company's aggregate security offerings exceeded $5 million, the Company was required to comply with Rule 701's disclosure rules.

89.     Pursuant to Rule 701, the Company was required to disclose to Plaintiff within a reasonable time prior to the expiration of his options information as to the value and antic-ipated value of the Company's common units.

90.     The Company failed to comply with the Rule 701 disclosure requirements.

91.     Instead, Defendants, and each of them, deliberately misled Plaintiff as to the value and anticipated value of the Company's common units during the exercise period for Plaintiff's options.

92.     Defendants, and each of them, deliberately omitted disclosure of the THL transaction during the exercise period for Plaintiff's options.

93.     Each of the misleading and omitted facts was material to Plaintiff; had Plaintiff known the true and anticipated value of the Company's common units, Plaintiff would have exercised his options during the exercise period.

94.     As a direct, proximate, and foreseeable result of the misrepresentation and omission of these material facts Plaintiff has suffered, and will continue to suffer damages in an amount to be proven at trial in excess of 4,561,784.

### COUNT FOUR
### CALIFORNIA SECURITIES LAW VIOLATIONS
### (All Defendants)

95.     Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

96.     The Defendants violated Cal. Corp. Code § 25110 by selling securities not ex-empt from Chapter 1 of Part 2 of the California Corporate Securities Law of 1968.

97.     The Defendants violated Cal. Corp. Code § 25110 by making material misrep-resentations as to the value of such securities.

98.    The Defendants violated Cal. Corp. Code § 25110 by omitting material information to the value of such securities.

99.    The Defendants' misrepresentations and omissions were intended to cause Plaintiff to decline to exercise his options.

100.    Plaintiff relied on the Company's material misrepresentations and omissions

101.    The Defendants, and each of them, benefitted from the expiration of Plaintiff's options.

102.    As a direct, proximate, and foreseeable result of Defendants violation of California securities laws, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial in excess of $4,561,784.

**COUNT FIVE**
**UNJUST ENRICHMENT**
**(INDIVIDUAL Defendants)**

103.    Plaintiffs incorporate the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

104.    The Defendants, and each of them, received undeserved and unearned benefits at the expense of the Plaintiff.

105.    The Defendants, and each of them, received such benefits as a direct and proximate result of their own wrongful, deceitful, malicious, and unlawful acts and omissions

106.    The Defendants, and each of them, continue to receive such benefits through the date of this Complaint and will continue to receive such benefits unless and until they are compelled to disgorge such benefits.

107.    Equity dictates that Defendants not be permitted to retain such benefits.

108.    Equity dictates that Defendants be compelled to make restitution to the Plaintiff in an amount to be proven at trial in excess of $4,561,784.

109.    At all times relevant to this Complaint, Plaintiff acted with clean hands.

## COUNT SIX
## BREACH OF CONTRACT
## (The Company)

110.    Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

111.    Pursuant to the Agreement, the Company promised to provide Plaintiff with the same information it was obligated to provide its Incentive Common Unit holders; *i.e.* employees holding options to purchase the Company's common units, under applicable law.

112.    As fully described above, the Company failed to disclose to Plaintiff information it was required to disclose pursuant to Federal, State, and common law.

113.    As a direct, proximate, and foreseeable result of the Company's breach of the Agreement, Plaintiff has suffered, and will continue to suffer damages in an amount to be proven at trial in excess of $4,561,784.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against the Defendants, including the following:

A.    Ordering the Company to exchange Plaintiff's options for 438,633 of its common units.

B.    Damages in an amount to be proven at trial of at least $4,561,784.

C.    Plaintiff's attorneys' fees and expenses.

D.    Plaintiff's costs.

COMPLAINT - 16

1

E.      Such other relief as the Court deems just, proper, and equitable under the cir-

2

cumstances.

3

December 12, 2017                          **Respectfully submitted,**

4

5

                                           **/s/ Richard A. Grimm**

6                                          Richard A. Grimm
                                           The Alameda, Suite 200
7                                          Santa Clara, CA 95050
                                           Telephone: (650) 248-5487
8                                          Facsimile: (650) 618-9856
                                           Email:richard@richardgrimm.com
9

10                                         *Counsel for Plaintiff Bruce Felt*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT - 17