1   RICHARD GRIMM (SBN 177463)
2   2391 The Alameda, Suite 200
    Santa Clara, CA 95050
    Telephone:    (650) 248-5487
3   Facsimile:    (650) 618-9856
    Email: richard@richardgrimm.com

4   *Attorney for Plaintiff*

5                   **UNITED STATES DISTRICT COURT**
                    **CENTRAL DISTRICT OF CALIFORNIA**
6                          **Southern Division**

7   **BRUCE FELT,**

8       **Plaintiffs,**

9                        **v.**                          Case No. 8:17-CV-02166-AG-JDE

10                                                       **FIRST AMENDED COMPLAINT**

11  **TEN-X, LLC, f/k/a AUCTION.COM, LLC;**
    **PETER MUNDHEIM; AGHA S. KHAN,**
    **and STONE POINT CAPITAL, LLC,**
12

13      **Defendants.**

14

15          Plaintiff Bruce Felt, by and through undersigned counsel, states the following as his

16  complaint against TEN-X, LLC, formerly Auction.com, LLC (the "Company"), Peter Mund-

17  heim, Agha S. Khan, and Stone Point Capital, LLC (together, the "Defendants"):

18

19                              <u>**INTRODUCTION**</u>

20          1.      Plaintiff asserts claims for violation of federal and state securities laws, breach

21  of contract, fraud, and breach of fiduciary duty against the Defendants. These claims arise

22  out of (a) the Company's issuance of unregistered, non-exempt securities in violation of the

23  SEC Acts of 1933 and 1934, (b) the Company's issuance of unqualified, non-exempt securi-

24  ties in violation of the California Corporate Securities Act, (c) breach of contract, (d) the

25  Company's misrepresentations as to the value of its incentive common units, causing Plaintiff

26

27

FIRST AMENDED COMPLAINT - 1

to decline to exercise stock options to acquire Company incentive common units that, had he known their value, he would have exercised, (e) the Company's material omissions of fact on which Plaintiff relied in declining to exercise his options, and (f) Peter Mundheim's, Agha Khan's, and Stone Point Capital, LLC's breach of fiduciary duties to the Plaintiff. As a direct, foreseeable, and proximate result of the Company's and the other Defendants' misconduct, Plaintiff has suffered and will continue to suffer damages in excess of $4,561,784.

## PARTIES

2.      Plaintiff Bruce Felt is a natural person residing at 1342 Garden Lane, Menlo Park, California, 94025.

3.      Defendant TEN-X, LLC, formerly known as Auction.com, LLC, is a Delaware limited liability company having its principal place of business at One Mauchly, Irvine, CA 92618. The Company's agent for service of process in California is Registered Agent Solutions, Inc., 1220 S Street, Suite 150, Sacramento, CA 95811.

4.      Stone Point Capital, LLC ("Stone Point"), is a limited liability company organized and existing pursuant to the laws of the State of Delaware. Stone Point operates offices in New York City and Greenwich, Connecticut. At all relevant times hereto, Stone Point owned a substantial number of shares of the Company's common units and/or other securities issued by the Company and had the right to elect two members of the Company's Board of Directors. Upon information and belief, as of June 6, 2017, Stone Point was the controlling equity holder of the Company.

5.      Peter Mundheim ("Mundheim") is a Principal and Counsel at Stone Point and a member of the Company's Board of Directors appointed by Stone Point.

FIRST AMENDED COMPLAINT - 2

6.      Agha S. Khan ("Khan") is a Senior Principal at Stone Point and a member of the Company's Board of Directors appointed by Stone Point.

## **JURISDICTION AND VENUE**

7.      This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a).

8.      This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's state law claims are so related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

10.     This Honorable Court has personal jurisdiction over the Company pursuant to Cal. Code Civ. Proc. § 410.10 because its principal place of business is located in, and Plaintiffs' claims arise out of activities in, the State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

11.     This Honorable Court has personal jurisdiction over Mundheim pursuant to Cal. Code Civ. Proc. § 410.10 because Plaintiff's claims arise out of Mundheim's activities in or directed at the State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

12.     This Honorable Court has personal jurisdiction over Khan pursuant to Cal. Code Civ. Proc. § 410.10 because Plaintiff's claims arise out of Khan's activities in or directed at the State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

13.     This Honorable Court has personal jurisdiction over Stone Point pursuant to Cal. Code Civ. Proc. § 410.10 because Plaintiff's claims arise out of Stone Point's activities in or directed at the State of California, and the exercise of personal jurisdiction is not inconsistent with the Constitution of this State or the United States.

## FACTUAL ALLEGATIONS

14.     The Company is in the business of online real estate sales.

15.     Plaintiff served as the Company's Chief Financial Officer from July 25, 2012 through April 29, 2014.

16.     On April 29, 2014, Plaintiff and the Company entered into a Confidential Transition and Separation Agreement and Release (the "Agreement"). Between April 29, 2014 and June 6, 2014, Plaintiff continued to be employed by the Company for the purpose of transitioning his responsibilities to a successor and assisting with the recruitment and retention of key employees.

17.     Pursuant to the Agreement, Plaintiff's employment at the Company ended on June 6, 2014.

18.     Immediately before he entered into the Agreement, Plaintiff had fully vested options to purchase 808,827 of the Company's incentive common units at a price greater than $4.76 per unit. His right to exercise those options, however, would have ceased if he were no longer employed by the Company.

19.     Pursuant to the Agreement, Plaintiff's exercise period for the options was extended to the earlier of (i) three years from his separation date (*i.e.* until June 6, 2017), or (ii) one year after the effective date of an initial public offering by the Company.

FIRST AMENDED COMPLAINT - 4

20.     The Company's incentive common units, and Plaintiff's options to purchase those units, are "securities" within the meaning of 15 U.S.C. § 77l and 17 C.F.R. § 240.701.

21.     The Company's incentive common units and the options are "securities" within the meaning of Cal. Corp. Code § 25110.

22.     Pursuant to the Agreement, the Company promised to "provide [Plaintiff] with all of the information it is obligated to provide its incentive common unit holders under applicable law and agreements…."

23.     The Company did not register Plaintiff's options or the underlying incentive common units with the United States Securities and Exchange Commission ("SEC").

24.     The Company did not qualify Plaintiff's options or the underlying incentive common units pursuant to the California Corporate Securities Act.

25.     After Plaintiff left the Company, but before June 6, 2017, the Defendants implemented a scheme to persuade Plaintiff and other option holders that the value of their options was materially less than their true value.

26.     The purpose of the scheme was to encourage the option holders not to exercise their options, thereby increasing the value of common units held by existing holders of those units, including Stone Point.

27.     Defendants accomplished their scheme by misrepresenting to Plaintiff and to others the value of the Company's common units and by failing to file or to provide Plaintiff legally required reports and other information that would have enabled Plaintiff to ascertain the true value of the Company's common units.

28.     Throughout the exercise period of Plaintiff's options (*i.e.,* between June 6, 2014, and June 6, 2017), Plaintiff requested that the Company provide him information

FIRST AMENDED COMPLAINT - 5

regarding the value and anticipated value of the Company's incentive common units and his options.

29.     During the exercise period of Plaintiff's options, the Company continually represented to Plaintiff that the value of its incentive common units was, and was likely to remain, below the exercise price of Plaintiff's options.

30.     Throughout the exercise period of Plaintiff's options, the Company represented to Plaintiff that the value of the Company's common units was no more than $4.76 per share and that his options therefore were "underwater," *i.e.,* that the price to exercise his options was greater than $4.76 per share, so the options were worthless.

31.     Set forth in Paragraphs 32 through 41 below are specific examples of the Company's statements to Plaintiff concerning the value of the Company's common units.

32.     On an annual basis the Company prepared a valuation of its shares pursuant to Section 409A of the Internal Revenue Code (the "§ 409A valuation").

33.     The Company provided to Plaintiff the § 409A valuation per share of its incentive common units on an annual basis.

34.     The § 409A valuations stated that the value of the Company's incentive common units were approximately $4.76 per unit.

35.     On or about June 24, 2015, the Company (then known as Auction.com) mailed Plaintiff a Confidential Disclosure Statement (the "2015 Statement"). The 2015 Statement represented that the value of the Company's common units was, and was likely to remain, below the exercise price of Plaintiff's options.

36.     Plaintiff did not receive any further financial statements from the Company after he received the 2015 Statement.

FIRST AMENDED COMPLAINT - 6

37.     Throughout the exercise period, and with increasing frequency beginning in September, 2016, Plaintiff requested the Company to provide him information about the value and anticipated value of the Company's common units and his options.

38.     In particular, Plaintiff spoke several times by telephone with Lan Phan, who was the Company's Corporate Controller. Those conversations occurred periodically between Plaintiff's termination of employment with the Company through the date that Plaintiff's Company options expired.

39.     On behalf of the Company, Ms. Phan advised Plaintiff that that the value of the Company's common units was, and was likely to remain, at the value set forth in the § 409A valuation, *i.e.,* approximately $4.76 per share, and that Plaintiff's options were "underwater."

40.     In addition, Plaintiff corresponded with David Thompson, the Company's Chief Marketing Officer, shortly before his Company options expired. Plaintiff inquired about whether a net exercise of his options would be possible.

41.     On behalf of the Company, Mr. Thompson advised that after speaking with Lee Leslie, the Company's General Counsel, a net exercise was not possible because the Company's valuation was below the exercise price of Plaintiff's options.

42.     In reliance upon the Company's representations about the value of the common units, Plaintiff did not exercise his options to purchase any common units before the expiration of his exercise period.

43.     The Company's representations about the value of the common units were false and Defendants knew they were false. On August 2, 2017, less than two months after the expiration of Plaintiff's options, the Company announced that Thomas H. Lee Partners

FIRST AMENDED COMPLAINT - 7

("THL"), a private equity firm, had entered into an agreement to purchase a controlling interest in the Company.

44.     Upon information and belief, THL paid approximately $10.40 per unit for Company common units. That amount is approximately 218% higher than the $4.76 per unit value that the Company represented to Plaintiff immediately before the expiration of his options.

45.     For the reasons set forth in Paragraphs 46 through 49 below, THL's agreement to pay approximately $10.40 per unit establishes that the value of Plaintiff's options at the close of his exercise period was far greater than $4.76 per share.

46.     The price set in the arms-length agreement between the Company and THL is more likely to reflect the actual value of the common units than a valuation unilaterally established by the Company and its directors and communicated to Plaintiff, particularly in light of the Stone Point's and the Company's motive to prevent Plaintiff and other option holders from exercising their options and thereby diluting the value of existing common units.

47.     THL's agreement to pay $10.40 per unit on August 2, 2017, shows that the fair market value of the Company's common units on that date vastly exceeded $4.76 per unit. Plaintiff is aware of no extraordinary change in the Company's operations, financial results, or forecasts between June 6, 2017, and August 2, 2017, that would account for an increase of more than 200% in the value of the common units during that period of less than two months.

48.     Complex financial transactions such as THL's acquisition of a controlling interest in the Company are customarily negotiated over a period of several months before a definitive acquisition agreement is signed. For that reason, it is likely that, before the

FIRST AMENDED COMPLAINT - 8

expiration of Plaintiff's options the Company and THL were negotiating the acquisition agreement, including the purchase price. It is therefore likely that, before the expiration of Plaintiff's options, the Company, Stone Point, Mundheim, and Khan were aware that an arms-length purchaser was willing to pay far more than $4.76 per share for the Company's common units.

49.     Although the Company continued to rely upon the IRS § 409A valuation and the 2015 Statement to represent the value of the common units to Plaintiff throughout the exercise period, those statements failed to disclose at least the following material information, which was necessary to make those statements not misleading or inaccurate as of 2017:

a.     The Company did not account for THL or other potential purchasers in calculating the fair market value of its common units.

b.     The Company Directors determined the fair market value of the Company's common units "in [their] sole discretion" without accounting for later obtained material information.

c.     The Company manipulated its forecasts in order to understate the true value of the Company.

d.     The Company did not consider the price it offered to others to invest or purchase the Company, which represented the Company's undisclosed belief as to its value.

50.     In reliance upon the Company's representations about the value of the incentive common units, and in particular its representations that the value of the incentive common units was less than Plaintiff's exercise price, Plaintiff did not exercise his options to purchase any common units before the expiration of the exercise period.

FIRST AMENDED COMPLAINT - 9

51.     During the exercise period for Plaintiff's options (June 6, 2014 to June 6, 2017), the Company did not file any periodic reports with the SEC. If the Company had filed such reports, they would have disclosed information that would have enabled Plaintiff to infer the Company's true value (and the true value of the Company's common units) to Plaintiff before the expiration of his options

52.     Prior to the expiration date of Plaintiff's options, the Company did not deliver to Plaintiff the financial information required by state and Federal securities laws, including, *inter alia*, Section 4(a)(2) of the Securities Act of 1933 (the "Act"), Section 12(g) of the Securities Act of 1934 (the "Exchange Act"), and SEC Rule 701, 17 CFR § 230.701. For example, the Company did not disclose risks associated with the investment, as required by 17 CFR § 230.701(e)(3) and did not deliver an SEC Regulation A offering statement, as required by 17 CFR §§ 230.251 through 230.263 and 17 CFR § 239.90. Those disclosures should have been provided to Plaintiff within a reasonable time before the exercise date of his options. 17 CFR § 230.17(e)(6).

53.     If the Company had provided Plaintiff with the disclosures and documents referred to in Paragraph 50, that information would have disclosed information adequate to establish the Company's true value (and the true value of the Company's common units) by Plaintiff before the expiration of his options.

54.     If Plaintiff knew the true value of the Company's common units before the expiration of his options, he would have exercised his options and would have owned 808,827 common units of the Company.

55.     The Defendants' scheme to encourage option holders not to exercise their options also was directed at option holders other than Plaintiff.

FIRST AMENDED COMPLAINT - 10

56.    In March or April of 2017, the Company gave its employees the opportunity to exchange their vested options to purchase the Company's incentive common units for restricted stock units in the Company's incentive common units ("RSUs"). Employees electing to participate in the exchange received one (1) RSU for three (3) Company options surrendered. The exchange therefore had the effect of materially diluting a participating employees' equity by two-thirds.

57.    The exchange program was not adopted for the purpose of compensating Company employees, but rather to ensure that Stone Point and other Company equity holders would recognize an accretion of value at the expense of Company employees.

58.    The Company did not provide Plaintiff with the opportunity to exchange his options for RSUs.

59.    Pursuant to the exchange offer, holders of vested RSUs were provided equity in the Company without having to pay the exercise price as required by the Company options.

60.    Thus, if the options issued by the Company were "underwater;" that is, if their exercise price was at or above the value of the Company's incentive common units, the RSUs were more valuable than options, which had no value at all.

61.    However, if the value of the Company's common units was significantly higher than the exercise price of the options, then three Company options were worth considerably more than one Company RSU.

62.    Upon information and belief, for the reasons stated in Paragraphs 42 through 47 above, at the time the Company provided the exchange opportunity to its employees the Company was aware that the value of its common units was or would be materially greater

than $4.76 per unit and was likely to be significantly higher than the exercise price of the employees' options.

63.    As a result of Defendants' misrepresentations of material fact and failure to disclose material facts, Plaintiff has suffered damages in excess of $4,561,784.

## COUNT ONE
## FEDERAL SECURITIES LAW VIOLATIONS
### (Defendant TEN-X)

64.    Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

65.    Plaintiff's common units and options are "securities" within the meaning of 15 U.S.C. § 77*l* and 77e.

66.    The Company sold unregistered securities to Plaintiff in violation of federal law.

67.    The Company's securities were not exempt from registration with the SEC because the Company did not comply with the requirements of any recognized exemption from registration.

68.    The Company violated Section 12(a) of the Act, 15 U.S.C. § 77*l*, by selling Plaintiff unregistered securities in violation of 15 U.S.C. §§ 77e and 77c. The Company's violations include:

        a. using the means of interstate commerce to communicate misleading and false statements of fact to Plaintiff in connection with the sale of unregistered securities,

b. using the means of interstate commerce to omit material facts from its communications with Plaintiff in connection with the sale of unregistered securities, and

c. selling unregistered securities not subject to any exemption from registration.

69. The Company violated Section 12(g) of the Exchange Act, 15 U.S.C. § 78*l*(g).

70. The Company violated the tender offer sections of the Act and the Exchange Act, 15 U.S.C. §§ 78n(d) and (e).

71. The Company violated SEC Rule 701, 17 C.F.R. § 230.701.

72. Upon information and belief, the Company issued securities to in excess of 500 persons.

73. Upon information and belief, the Company issued securities to in excess of 500 persons who were not accredited investors.

74. Upon information and belief, the aggregate sales price of securities sold by the Company during the twelve months prior to June 6, 2017 exceeded the greater of $5 million, 15% of the Company's total assets, or 15% of the outstanding amount of the Company's securities being sold in reliance on SEC Rule 701.

75. Therefore, pursuant to Rule 701, the Company was required to disclose to Plaintiff within a reasonable time prior to the expiration of his options the following information:

a. A summary of the material terms of the option plan;

b. Information about the risks associated with investment in the securities sold to Plaintiff;

     c.   Information that the 2015 Statement was inaccurate and no longer reflected the value and anticipated value of the Company; and

     d.   Financial statements of the Company as of a date no earlier than six months prior to the expiration of Plaintiff's options.

76.    The Company failed to comply with the Rule 701 disclosure requirements.

77.    The Company failed to comply with Section 4(a)(2) of the Act and SEC Rule 506(b), applicable to certain private placements of securities.

78.    The Company's failure to comply with Section 4(a)(2) of the Act includes, without limitation, the following:

     a.   Failing to provide Plaintiff with or access to the type of information that would be included in a registration statement;

     b.   Failing to provide Plaintiff with information that would have enabled him to make an informed investment decision; and

     c.   Failing to provide Plaintiff with or access to then-current financial information about the Company, including, without limitation, the fair market value of the Company as of the date his options expired.

79.    Instead, the Company failed to provide Plaintiff accurate information pursuant to the Act as to the value and anticipated value of the Company's common units during the exercise period for Plaintiff's options.

80.    Had the Company complied with the Act, Plaintiff would have exercised his options to purchase Company common units during the exercise period.

FIRST AMENDED COMPLAINT - 14

81. As a direct, proximate, and foreseeable result of the Company's failure to comply with the Act, Plaintiff has suffered, and will continue to suffer damages in an amount to be proven at trial in excess of $4,561,784.

## COUNT TWO
## CALIFORNIA SECURITIES LAW VIOLATIONS
## (Defendant TEN-X)

82. Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

83. Plaintiff's common units and options are "securities" within the meaning of the California Corporate Securities Act (the "California Act"), Cal. Corp. Code § 25019.

84. The Company is an "issuer" of securities pursuant to Cal. Corp. Code § 25010.

85. The Defendants violated Cal. Corp. Code § 25110 by selling securities not qualified under the Act or exempt from Chapter 1 of Part 2 of the California Act.

86. The Company's sale of securities in violation of the California Act constitutes constructive fraud.

87. The Company violated the California Act by making material misrepresentations as to the value of such securities.

88. The Company violated California Act by omitting material information to the value of such securities.

89. The Company's misrepresentations and omissions were intended to cause Plaintiff to decline to exercise his options.

90. Plaintiff relied on the Company's material misrepresentations and omissions.

91.     As a direct, proximate, and foreseeable result of Defendants violation of the California Act, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial in excess of $4,561,784.

### COUNT THREE
### BREACH OF CONTRACT
### (Defendant TEN-X)

92.     Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

93.     Pursuant to the Agreement, the Company promised to provide Plaintiff with the same information it was obligated to provide its incentive common unit holders under applicable law.

94.     As fully described above, and in Count Four below, the Company failed to disclose to Plaintiff information it was required to disclose to incentive common unit holders pursuant to Federal and State securities law and common law.

95.     As a direct, proximate, and foreseeable result of the Company's breach of the Agreement, Plaintiff has suffered, and will continue to suffer damages in an amount to be proven at trial in excess of $4,561,784.

### COUNT FOUR
### FRAUD
### (Defendant TEN-X)

96.     Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein.

97.     At all relevant times hereto, the Company acted with deceit in order to enrich itself and its major equity holder, Stone Point, at Plaintiff's expense.

98.     The Company had a duty to disclose to Plaintiff material facts regarding the value and anticipated value of the Company's common units.

99.     The Company falsely represented to Plaintiff that the value of the Company's common units was below the exercise price of his options.

100.    The Company's representations as to the value of the Company's common units were material facts.

101.    Plaintiff reasonably relied on the Company's' misrepresentations as to the value and anticipated value of the Company's common units in deciding whether to exercise his options.

102.    The Company intended that Plaintiff rely on its misrepresentations as to value and anticipated value of the Company's common units.

103.    On information and belief, the Company knew that the THL transaction would materially increase the value of the Company's common units, and possessed this knowledge before the expiration of the exercise period for Plaintiff's options.

104.    On information and belief, the Company intentionally failed to disclose the THL transaction and/or other potential acquisitions to Plaintiff prior to the expiration of the exercise period for Plaintiff's options.

105.    On information and belief, the Company concealed the THL transaction from Plaintiff prior to the expiration of the exercise period for Plaintiff's options.

106.    On information and belief, the THL transaction was a material fact that the Company omitted to disclose to Plaintiff.

107.    On information and belief, the Company intended that Plaintiff rely on its failure to disclose the THL transaction during the exercise period for Plaintiff's options.

FIRST AMENDED COMPLAINT - 17

108.    Plaintiff reasonably relied on Defendants' omission of the material fact of the THL transaction.

109.    As a direct, proximate, and foreseeable result of Defendants' misrepresentations, concealment, and omission of these material facts Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at trial in excess of $4,561,784

## COUNT FIVE
## BREACH OF FIDUCIARY DUTY
### (Defendants Stone Point, Mundheim, and Khan)

110.    Plaintiff incorporates the allegations stated in the preceding paragraphs of this Complaint as if fully set forth herein

111.    Upon information and belief, Stone Point was the controlling equity holder of the Company at all relevant times hereto, including the period during which Plaintiff could exercise his options to purchase Company common units.

112.    Stone Point had the power to elect two members of the Company's Board of Directors, and appointed Mundheim and Khan to the Board.

113.    Stone Point controlled and directed the actions of Mundheim and Khan as members of the Company's Board.

114.    Mundheim and Khan, as members of the Company's Board of Directors, owed fiduciary duties to Plaintiff.

115.    Mundheim and Khan breached their fiduciary duty of loyalty to Plaintiff by enriching themselves and/or Stone Point at Plaintiff's expense.

116.    Mundheim and Khan breached their fiduciary duty of due care to Plaintiff by misleading him as to the actual and anticipated value of the Company's common units and failing to disclose to Plaintiff the fair market value of the Company common units.

117.    Mundheim and Khan breached their fiduciary duty of good faith to Plaintiff by misleading him as to the actual and anticipated value of the Company's common units and failing to disclose to Plaintiff the fair market value of the Company common units.

118.    At all relevant times hereto, Mundheim and Khan were agents of Stone Point.

119.    Stone Point is vicariously liable for the acts and omissions of Mundheim and Khan.

120.    Stone Point aided and abetted Mundheim and Khan's breach of the fiduciary duties they owed Plaintiff.

121.    Stone Point enriched itself at Plaintiff's expense; Plaintiff's failure to exercise his option to purchase Company common units increased the value of Stone Point's equity in the Company.

122.    As a direct, proximate, and foreseeable result of the aforementioned breaches of the fiduciary duties owed Plaintiff, he has suffered, and will continue to suffer, damages in an amount to be proven at trial in excess of $4,561,784.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against the Defendants, including the following:

A.    Ordering the Company to exchange Plaintiff's options for 438,633 of its common units.

B.    Damages in an amount to be proven at trial of at least $4,561,784.

C.    Plaintiff's attorneys' fees and expenses.

D.    Plaintiff's costs.

E.      Such other relief as the Court deems just, proper, and equitable under the cir-
cumstances.

## PLAINTIFF DEMANDS A JURY

March 9, 2018                                    **Respectfully submitted,**


                                                 **_/s/ Richard A. Grimm_**
                                                 Richard A. Grimm
                                                 2391The Alameda, Suite 200
                                                 Santa Clara, CA 95050
                                                 Telephone: (650) 248-5487
                                                 Facsimile: (650) 618-9856
                                                 Email:richard@richardgrimm.com

                                                 *Counsel for Plaintiff  Bruce Felt*

FIRST AMENDED COMPLAINT - 20

## CERTIFICATE OF SERVICE

I certify that I caused the attached document to be filed using the Court's CM/ECF system and thereby served on counsel of record.

March 9, 2018                                    */s/ Steven M. Oster*
                                                 Steven M. Oster

FIRST AMENDED COMPLAINT - 21